FILED
2010 Mar-09  AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:08-CV-01159-LSC |
| | ] | |
| TIMOTHY REX COOPER, ACIPCO, | ] | |
| SOUTHEAST LOGISTICS, INC.,] | | |
| GRIFFIN PIPE PRODUCTS COMPANY, | ] | |
| S.J. LOUIS CONSTRUCTION, INC., | ] | |
| QBE INSURANCE CORPORATION, | ] | |
| | ] | |
| Defendants. | ] | |

Memorandum of Opinion

I.    Introduction.

The Court has for consideration several motions for summary judgment,

which were filed on October 30 and 31, 2009, by the remaining parties to this

action.  (Docs. 124, 126, 128, 130 & 135)  This declaratory judgment action

was filed on June 27, 2008, by Great West Casualty Company ("Great West")

seeking a determination that it owes no coverage under a Commercial Auto

Policy issued to Southeast Logistics, Inc. ("Southeast") relative to claims

brought by Timothy Rex Cooper ("Cooper") in an underlying state suit.  (Doc.

1.) On July 24, 2008, QBE Insurance Corporation ("QBE") filed a counterclaim against Great West and the other parties to this action seeking a declaration that it also owed no coverage under a commercial general liability policy with Southeast Logistics.  (Doc. 12.)  American Cast Iron Pipe Company ("ACIPCO") filed a cross-claim against QBE claiming Breach of Contract and Bad Faith Failure to Defend on August 29, 2008, later amended on October 14, 2008.  (Docs. 22 & 42.)  Following a number of amendments, Great West, QBE, and Southeast[1] have moved for summary judgment on the outstanding coverage issues.  Southeast has also moved for summary judgment on its breach of contract claim.[2]  These motions have been briefed by all parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Great West, Southeast, and ACIPCO's motions for summary judgment seeking a declaration that QBE's automobile exclusion does not apply are GRANTED.  Great West's motion for summary judgment seeking a declaration that it does not owe coverage for Cooper's injuries is GRANTED.   Furthermore,  Southeast  and  ACIPCO's  motion  for  summary

---

[1] ACIPCO joined in Southeast's motion for summary judgment.  (Doc. 135.)

[2] Southeast has not moved for summary judgment on its bad faith claims.  (Doc. 136.)

judgment seeking a declaration that QBE breached its contractual duty to provide a defense to ACIPCO against the claims made by Cooper is GRANTED. QBE's motion for summary judgment is DENIED.  Great West, Southeast, and ACIPCO's motions for summary judgment seeking a declaration that QBE must indemnify Cooper for his injuries are DENIED.

II.    Facts.[3]

Great West and QBE are companies engaged in the business of writing insurance, both of which issued policies of insurance to Southeast.  Southeast is a trucking and hauling company that was hired by ACIPCO to transport that company's cast iron pipes from Birmingham, Alabama to Greenville, South Carolina in July 2006.

On or around July 19, 2006, Cooper, employed as a truck driver by Southeast, picked up a load of cast iron pipes from ACIPCO in Birmingham, Alabama.  These pipes were loaded in two stacks in Birmingham, Alabama by

---

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

employees of ACIPCO and Griffin Pipe Products Company ("Griffin").  Cooper

delivered these pipes to a work site operated by S.J. Louis Construction, Inc.

("S.J. Louis") in Greenville, South Carolina.  After exiting his vehicle and

removing the straps securing the load, the pipes on the front of the trailer

shifted and fell off, striking Cooper and causing him to suffer severe injuries.

The parties to this matter disagree as to exactly what was occurring at the

time of the accident.  Great West, ACIPCO, and Southeast claim that a

forklift was unloading some of the pipes at the time of Cooper's accident.

QBE claims that the forklift was not in use at the time.  Testimony from

Cooper and Refugio Perez ("Perez"), the forklift driver for S.J. Louis, conflict

as to whether the forklift was in use at the time of the accident.

On September 27, 2007, Cooper filed the underlying action against

Southeast, ACIPCO, Griffin, and various fictional defendants seeking

compensation for his injuries alleging, among other things, that those

defendants negligently failed to load and unload the ACIPCO pipes in a

manner that would keep them secure during the unloading process, thus

resulting in the accident when an employee of S.J. Louis began to unload the

pipes with a forklift.  On January 29, 2008, Cooper amended his complaint

to add negligence and wantonness claims against S.J. Louis and clarifying his assertion that the defendants were negligent during the unloading process.

At the time of the accident, Southeast and ACIPCO were operating under a Transportation Agreement.  Under this agreement, Southeast agreed to provide insurance, with ACIPCO designated as an additional named insured or co-insured, covering any liability arising from the Transportation Agreement.  Southeast maintained two relevant insurance policies during this period.   Southeast was insured under a commercial auto liability policy ("Auto") with Great West and a general liability policy ("CGL") with QBE.  These two policies have complementary exclusions.  The Great West policy contains an exception that generally excludes from coverage injury resulting from the movement of property by a mechanical device.   QBE's policy, on the other hand, contains an exception to an exclusion.  While QBE generally excludes injury arising out of loading or unloading from its coverage, it does not include the movement of property by means of a mechanical device under its definition of loading or unloading.

Following the filing of the lawsuit by Cooper in October 2007, both Southeast and ACIPCO made claims for coverage under the policies issued by Great West and QBE.  On December 18, 2007, Billy Barrett ("Barrett"), the claims manager for the managing general agent for QBE, Anchor Managing General Agency, Inc. ("Anchor"), sent a letter to ACIPCO stating that the matter was being reviewed but that it was his opinion that coverage was excluded by the automobile exclusion contained in the CGL policy with Southeast.   On February 6, 2008, QBE's attorney, Stewart Howard ("Howard"), sent a letter to Southeast denying coverage for the coverage and indemnity claim made by ACIPCO based on the Auto Exclusion in the CGL. In response to a letter from Southeast's attorney seeking a defense from QBE, Howard replied on March 3, 2008, that because the Auto Exclusion clearly applied, no investigation of the accident was required and no defense was owed by QBE.  The letter further stated that ACIPCO did not meet the requirements as an additional insured under the CGL because Southeast had no liability in causing the injury in question.  Despite the conclusions in this letter, the next day, March 4, 2008, Barrett sent a letter to Southeast stating that QBE would appoint an independent adjuster to gather information on

the matter.  That investigator, Rick Norman of Cooks Claims Service, Inc., submitted his investigation report to Barrett on March 14, 2008.  The report generally supported the view that improper chocking, and not the movement of pipes by forklift, was the ultimate cause of Cooper's injury.  Barrett did not further contact Southeast or ACIPCO regarding this report.

On July 7, 2008, ACIPCO once again demanded that QBE provide a defense against Cooper's claims.  On July 18, 2008, QBE denied, for the third time, all coverage on the basis of the Auto Exclusion in the CGL.  Great West, on the other hand, agreed on March 14, 2008, to provide a defense to ACIPCO subject to a reservation of rights.  Following the filing of this declaratory judgment action by Great West, Southeast and ACIPCO asserted breach of contract and bad faith claims against QBE.  On September 18, 2008, QBE agreed to extend a defense to ACIPCO subject to a reservation of rights.

In October of 2009, an agreement was reached to settle Cooper's personal injury claims in the underlying suit.  QBE and Great West each contributed $250,000 to settle Cooper's claims against ACIPCO, with each reserving the right to seek reimbursement of its contribution.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving

party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941

F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

The parties have moved for summary judgment on all outstanding issues

in this matter other than ACIPCO's bad faith claims against QBE.  Initially,

the Court will look to the language of the insurance contracts in question

along with the undisputed evidence regarding Cooper's accident to

determine whether QBE or Great West owes coverage to Southeast and

ACIPCO.  The Court will then turn to whether, given the allegations in

Cooper's complaint, QBE violated its contractual duty to provide a defense

to ACIPCO against the claims made by Cooper.

A.    Motions for Summary Judgment by QBE and Great West Seeking
Coverage Declaration.

As a general matter, "[i]nsurance contracts, like other contracts, are construed to give effect to the intention of the parties, and when that intention is clear and unambiguous, the insurance policy must be enforced as written." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 558 (Ala. 1994).  But also like other contracts, when ambiguity exists, "in case of doubt or uncertainty as to a policy's meaning, the terms of the policy are to be interpreted against the party that drafted them." *American & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226, 1228 (Ala. 1997).  Generally, then, "all ambiguities must be resolved against the insurance company." *Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1161 (Ala. 2006) (citations omitted).  Loss of coverage due to an ambiguous exclusion is particularly disfavored, and "[e]xceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002).

QBE and Great West both argue that, because of the exclusions in each policy, the other insurance company owes coverage to Southeast and ACIPCO

for the damages suffered by Cooper.  Both QBE and Great West also argue that their policies with Southeast do not cover claims made against ACIPCO.

Turning to the underlying complaint, Cooper asserted in his lawsuit that the various parties were negligent in both the manner of loading and unloading, specifically alleging that the accident occurred "as the pipes were being unloaded" by a South Carolina worker with a forklift.  (Doc. 137, Ex. 2 at 5.)  Based on this description, it would appear at first blush that QBE owes coverage under its insurance policy with Southeast. Therefore, the Court will examine the QBE policy first.

As an initial matter, QBE argues that ACIPCO is not an additional insured under Southeast's CGL policy and therefore is afforded no coverage in this matter.  At the time of Cooper's accident, Southeast, the company for which he worked, was an insured under a CGL policy bearing the number ANM12754-5.  (Doc. 137, Ex. 7.)  The CGL defines an additional insured as follows:

> Section II - Who is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization

have agreed in writing in a contract or agreement that such
person or organization be added as an additional insured on your
policy.  Such person or organization is an additional insured only
with respect to liability for "bodily injury," "property damage"
or "personal and advertising injury" caused, in whole or in part,
by:

1.    Your acts or omissions, or
2.    The acts or omissions of those acting on your behalf;
       in the performance of your ongoing operations for the
       additional insured.
       A person's or organization's status, as an additional insured
       under this endorsement ends when your operations for that
       additional insured are completed.

*Id*. at 43.

Southeast and ACIPCO agreed that Southeast would "provide and keep

in effect during the period of this Agreement" insurance sufficient to cover

liability "arising from or incidental to [Southeast's] services."  (Doc. 137, Ex.

6 at 7.)  Furthermore, both QBE and Southeast seem to agree that ACIPCO is

an additional insured to the extent that Cooper's injuries were caused, at

least in part, by the act or omission of Southeast or those acting on

Southeast's behalf.  (Doc. 127 at 32, Doc. 136 at 26.)

Under the Transportation Service Agreement ("Transportation

Agreement") between Southeast and ACIPCO, the parties agreed, "[t]he

manner of loading will be under the direction of [Southeast]."  (Doc. 137, Ex.

6 at 4.)  The agreement further stated that Southeast was "responsible for securing and keeping secured each load of products."  *Id.*  Therefore, to the extent Cooper's underlying suit alleged that the pipes that caused his injury were negligently loaded, then the bodily injury he suffered would have been caused, at least in part, by the acts or omissions of Southeast in failing to ensure proper loading.  While ACIPCO personnel constructed the dunnage and loaded the pipes onto Cooper's truck, they were effectively working for Southeast under the Transportation Agreement.  Cooper even told an ACIPCO employee during the process, "I want it nailed properly.  I don't want this stuff coming loose."  (Doc. 137, Ex. 5, Cooper Depo. at 107:11-13.)

Given the contractual relationship between ACIPCO and Southeast, it is evident that ACIPCO is an additional insured under the CGL.  If nothing else, Cooper himself, as Southeast representative during the loading process, was responsible for ensuring that the pipes were loaded correctly.  Given his allegations that the pipes were in fact loaded in a negligent manner, Cooper,

and thus Southeast, was perhaps at least somewhat responsible for the accident that later befell him. [4]

Turning to the policy itself, the CGL is a coverage based policy for bodily injuries or property damage occurring during the coverage period. (Doc. 137, Ex. 7 at 27.)  The CGL policy also contains an exclusion ("Auto Exclusion") to bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." *Id.* at 29.  The Auto Exclusion defines use as including "operation and 'loading and unloading.'" *Id.*  "Loading and unloading" is itself a defined term.  The CGL states,

> "Loading or unloading" means the handling of property[5]:
> a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"
> b.  While it is in or on an aircraft, watercraft or "auto;" or
> c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
> <u>but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."</u>

---

[4]  The Court addresses QBE's arguments regarding contributory negligence below.

[5]  Property is partially defined in the CGL under the definition of property damage as "tangible property."  (Doc. 137, Ex. 7. at 39.)

*Id.* at 37-38 (emphasis added).

Therefore, whether QBE owes coverage over an incident that involves an auto will be determined by whether the occurrence arises from loading or unloading involving the movement of property by means of a mechanical device that is not attached to the auto in question.  Construing the auto exception narrowly, as is required under Alabama law, it is evident that QBE does owe coverage.

The events that gave rise to Cooper's injuries occurred during the loading and unloading of Cooper's cargo of ACIPCO pipe.  While the parties disagree on the chain of events that eventually led to Cooper's injuries, even construing all factual disputes in favor of QBE leads to the conclusion that QBE owes coverage.  As discussed above, the pipes in question were loaded, through the use of a forklift, by ACIPCO personnel in Birmingham.  (Doc. 127 at 5-7; Doc. 133, Ex. P, Herron Depo. at 12:6-12.)  QBE argues that ACIPCO used wooden chocks that were too small for the load of pipe and that ACIPCO improperly installed those chocks by using only one nail that was itself nailed in the opposite direction as necessary to safely secure the load.  (Doc. 127 at 9-11.)  Upon arriving at the South Carolina work site, Cooper removed the

straps attached to Cooper's trailer that were placed over the top of the load. (Doc. 146 at 16-18; Doc. 137, Ex. 5, Cooper Depo. at 150:23-163:3.)  Some of these straps were stuck to the paint on the pipes, and Cooper used a pry bar to loosen these straps in order to remove them.  *Id.*  At this point, the undisputed nature of the facts in this case break down.  Cooper claims that Perez had "bumped the load" with his forklift when the pipes fell on him. (Doc. 137, Ex. 5, Cooper Depo. at 178:12-13.)  Perez testified that the he never touched the truck with the forklift prior to the accident and was "10 or 15" feet away at the time.  (Doc. 133, Ex. L, Perez Depo. at 141:18-142:18.)  This dispute is irrelevant however, as even under QBE's version of the facts, coverage is due for Cooper's accident.

QBE rests its arguments regarding coverage on what it considers the proximate cause of Cooper's accident — "the way the pipes were loaded, secured, and chocked on the trailer.  The allegations in the Complaint did not contend that a mechanical device caused the accident or that its use was responsible.  Moreover, there is no allegation that a mechanical device was ever used in the loading process in a way that contributed to the fall of the pipes." (Doc. 129 at 11)  QBE's policy, however, is not so narrowly written.

The CGL is a general liability policy, and it purports to cover any bodily injury that "is caused by an 'occurrence' that takes place in the 'coverage territory,'" subject of course to narrowly construed exclusions. (Doc. 137, Ex. 7 at 27)   Occurrence is defined broadly as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 55.  As a general matter then, to the extent an insured is involved in an accident, the CGL requires coverage.  As noted above, due to the contract between Southeast and ACIPCO, both are insureds of QBE. Therefore, the initial presumption is in favor of coverage for Southeast and ACIPCO.  The Court must then turn to see whether the CGL's Auto Exclusion, narrowly construed, precludes that coverage.

The parties argue as to whether the cause of the accident was the result of improper chocking of Cooper's truck at the ACIPCO loading site or improper unloading by Perez in South Carolina.  Under either causal theory, however, QBE owes coverage.   QBE attempts to avoid coverage by arguing that it was the improper placement of the chocks and loading of Cooper's truck, and not negligence involving the use of a mechanical device, that resulted in the injuries to Cooper.  Under QBE's exclusion, however, what

occurred that day in an ACIPCO yard was not loading or unloading, but rather

the movement of property with a mechanical device.  It is undisputed that

the pipes were moved with a forklift and that it was during that movement

that the chocks that supposedly failed were installed on the truck.  It is clear

then that, under QBE's theory that the pipes fell from the truck as a result

of improper chocking, that improper chocking was a component of the

movement of property with a mechanical device, not loading or unloading,

as defined in the QBE insurance contract.

Furthermore, even as a purely contractual matter,  QBE's mechanical

device exception to the loading and unloading exclusion does not require that

the mechanical device have caused the injury.  Rather, the CGL simply states

that, while QBE will not cover injuries arising from loading or unloading,

"'loading or unloading' does not include the movement of property by means

of a mechanical device . . . ." (Doc. 137, Ex. 7 at 37-38)  Effectively, the

mechanical device clause serves to circumscribe an exclusion that Alabama

law already requires this Court to narrowly

interpret.  QBE seeks to turn this precedent on its head, requesting that this

Court broadly construe its exclusion while narrowly applying the mechanical

device exception only to instances in which property is being moved at the actual time of the accident.  In fact, QBE asks for an even more narrow interpretation, asking that the exception only apply if "a mechanical device *caused* the accident or that its use was responsible."  (Doc. 129 at 11) (emphasis added).

While QBE's interpretation is not itself entirely implausible, the requirement of Alabama law that this court broadly construe coverage and interpret exclusions narrowly while also construing insurance contracts against the insurer does not permit so constricted a reading of the CGL. Under the CGL, liability arising from use of an auto is excluded.  Use includes loading and unloading.  Loading and unloading does not included instances in which property is moved by a mechanical device.  Use therefore does not include instances of movement of property by a mechanical device.  QBE is a sophisticated insurer.  Had it intended to only cover liability caused by property being moved by a mechanical device at the time of an accident, it could have so drafted its policy rather than using the broader language discussed above.  Therefore, liability arising from an instance in which property is moved by a mechanical device is not excluded from the CGL.

Because the loading or unloading of Cooper's truck involved the use of a mechanical device, any injury arising from that loading or unloading was not excluded from coverage.  Long standing precedent regarding the loading and unloading of vehicles further supports this view.  With respect to loading and unloading clauses in insurance policies, "there are two theories — so called: (1) The 'coming to rest' doctrine, and (2) The 'complete operation' doctrine."  *Commercial Standard Ins. Co. v. New Amsterdam Casualty Co.*, 272 Ala. 357, 361 (Ala. 1961).  The coming to rest doctrine "covers the period of time and events beginning when the articles are started in movement which movement is not interrupted or broken by rest or pauses, until the articles are placed in or on the motor vehicle."  *Id.* (citations omitted). Presumably, under the coming to rest doctrine, a loading or unloading clause would not cover the period from when the loading was completed until the vehicle in question arrived at its destination.   Once unloading began, however, the coming to rest doctrine would apply until unloading was completed. *See generally* 6 A.L.R. 4th 686.  The complete operation doctrine is more encompassing.  Such a clause would cover "the entire process involved in the movement of goods from the moment when they are given

into insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made."   *Commercial Standard Ins. Co.*, 272 Ala. at 361 (citations omitted).  This doctrine covers "the entire process moving goods, and includes all operations necessary to effect a completed delivery."  7 Am. Jur. 2d *Automobile Insurance* § 306.

While the complete operation doctrine is considered the modern view, Alabama has not expressly adopted either doctrine.  The Fifth Circuit has noted, however, that "[a]bsent the guidance of state court decisions, the federal courts have generally applied the 'complete operations' rule."  *Fireman's Fund Ins. Co. v. Canal Ins. Co.*, 411 F.2d 265, 268 (5th Cir. 1969)[6]; *Empire Fire & Marine Ins. Co. v. Hollis*, 432 F. Supp. 90, 92 (S.D. Ala. 1977) (applying the complete operation rule in accordance with *Fireman's Fund*).  Therefore, this Court will apply the complete operations rule.

The facts of *Travelers Indemnity Company v. General Star Indemnity Company* are strikingly similar to the present matter, and the district court's able handling of the mechanical device exclusion in that case is instructive.

---

[6] In *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit handed down prior to October 1, 1981.

157 F. Supp. 2d 1273 (S.D. Ala. 2001).  In *Travelers*, two insurance companies each paid half of a settlement to a worker who was injured when a steel pipe rolled off of a trailer as it was being loaded.  *Id.* at 1281.  The Travelers's policy excluded "the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'." *Id.* at 1278.  The General Star policy excluded coverage for loading and unloading, but stated that loading or unloading "does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the 'auto'." *Id.* at 1280.  The undisputed facts of *Travelers* revealed that a truck driver failed to properly insert a number of metal pins meant to ensure that the loaded pipe did not roll off of his trailer.  *Id.* at 1281-83.  At some point during the loading process, the pins in question came loose and the pipe began rolling off of the truck.  *Id.* at 1282-83.  At the time of the accident, the forklift which had earlier been used to load the pipe was "15 foot from the truck," although the injured worker was using a pry bar to move the pipes at the time they started rolling. *Id.* at 1281-83.

The *Travelers* court, applying the complete operation doctrine,[7] found that Travelers owed no coverage due to the mechanical device exclusion and that General Star did owe coverage because a mechanical device had been used during the loading of the pipes.   The court determined that, since a mechanical device "was being used in the loading process," it was irrelevant for the purposes of the exclusion whether it was being used at the time the accident occurred or whether the actual cause of the accident was the negligent placement of the metal pins.[8]  *Id.* at 1287-88.

The facts of the present case mirror those of *Travelers*.  The complete operations doctrine requires the Court to view the loading and unloading process as a whole, and there is no allegation of an intervening cause outside of the loading and unloading process.  As a forklift was used in the loading of Cooper's truck and, at a minimum, a pry bar was used to loosen the straps

---

[7] The court in *Travelers* was applying Oklahoma law.  Oklahoma has expressly adopted the complete operation doctrine.  *Travelers*, 157 F. Supp. 2d at 1281-83.

[8] The court's ruling may have been different if it were argued that something outside of the loading process caused the accident in question.  Here, as there, no such argument has been made.  Furthermore, in the *Travelers* case, the General Star policy also included a "product completed operations" clause that also conflicted with the loading and unloading exception to General Star's coverage.   While presenting a factual distinction to the present matter, the *Travelers* opinion remains instructive.

on the pipes during the unloading process in South Carolina, it is evident that QBE cannot deny coverage for Cooper's injuries because of its exclusion.  *See Travelers*, 157 F. Supp. 2d at 1288 (finding that both a forklift and a pry bar are mechanical devices).[9]

It is evident that the accident in this matter was the result of movement of property by a mechanical device.  Therefore, QBE's motion for summary judgment seeking a declaration that its Auto Exclusion applies to coverage over Cooper's injuries is DENIED.

Great West, by the same token, does not owe coverage for Cooper's accident.   Great West provided commercial auto coverage under policy number GWP39928A.  (Doc. 133, Ex. U)  The policy excludes bodily injury "resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'" *Id.* at 28.  Applying the same logic to Great West's policy as QBE's, it is clear

---

[9] Furthermore, even if the Court were to apply the coming to rest doctrine, it is undisputed that Cooper was using a pry bar to loosen the straps that held the pipes on his truck. At that point, even if whatever happened during the loading process was foreclosed, the unloading process with a mechanical device had begun.

that Great West does not owe coverage to Southeast or ACIPCO.[10]  Great

West's motion for summary judgment seeking a declaration that it owes no

coverage over Cooper's injuries is GRANTED.

B.  QBE's Defense of Contributory Negligence.

Although QBE cannot rely on its exclusion to preclude coverage of

Cooper's injuries, the defense of contributory negligence prevents this Court

from finding that QBE is liable for Cooper's injuries at the summary judgment

stage.  Under long standing Alabama law, "All matters of defense to an

action such as the fellow servant rule, contributory negligence, assumption

of the risk, etc., are to be determined *lex loci deliciti*."  *Caine v. St. Louis

& S. F. R. Co.*, 209 Ala. 181, 182 (Ala. 1923).  Furthermore, "where an injury

occurs in a jurisdiction other than where the wrongful act or omission took

place, the law of the jurisdiction where the injury was sustained controls.

This represents the majority view of jurisdictions that apply the *lex loci

delicti* doctrine" *Norris v. Taylor*, 460 So. 2d 151, 153 (Ala. 1984).  The

relevant choice of law question turns then on the state of injury, not where

---

[10] Great West argues that under its insurance contract with Southeast, ACIPCO would not be an additional insured.  As the Court has determined that Great West owes no coverage to Southeast in any event, there is no need to reach this argument.

the "negligent or wanton conduct" occurred.  *Id.*  While the doctrine of *lex loci delicti* may be limited in cases where the law of another state offends the public policy of the state where the action is brought, Alabama courts have found that comparative negligence does not offend the public policy of Alabama.  *See Caine*, 209 Ala. at 182-83.  As Cooper's injury was sustained in South Carolina, the Court will apply South Carolina's law of contributory negligence.

Unlike Alabama, South Carolina is a comparative negligence state.  *See Bloom v. Ravoira*, 339 S.C. 417, 422 (S.C. 2000).  Under South Carolina law, "the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent.  Therefore, summary judgment is generally not appropriate in a comparative negligence case."  *Id.* (citations omitted).

In the present matter, it certainly cannot be said that the "sole reasonable inference" is that Cooper's negligence exceeded the fifty percent threshold necessary to grant summary judgment in favor of QBE.  But it also would be inappropriate at this time to find that QBE could not rely on the

defense of comparative negligence in arguing that ACIPCO, and therefore QBE, bares no or at least limited liability to Cooper because of his own contribution to his accident.   Therefore, to the extent the summary judgment motions filed by Great West, ACIPCO, and Southeast seek a declaration that QBE is liable for the injuries to Cooper, the motion is DENIED.

> C.    ACIPCO's Motion for Summary Judgment on Breach of Contract for Failure to Defend Claim.

Under Alabama law, a liability insurance policy includes two separate duties, "the duty to defend . . . and the duty to indemnify."  *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003).  The duty to defend is more extensive than the duty to indemnify.  *Id.*  The duty to defend "is determined primarily by the allegations contained in the complaint."  *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001).  To the extent there is uncertainty as to whether the allegations in the complaint invoke the duty to defend, "the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured."  *Id.*  To the extent the complaint alleges acts

covered under the policy in addition to acts that would not be covered, "the insurer is under a duty to at least defend the allegations covered by the policy." *Blackburn v. Fidelity & Deposit Co.*, 667 So. 2d 661, 670 (Ala. 1995). "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Tanner*, 874 So. 2d at 1063-64.

It cannot be questioned that QBE has violated its duty to defend in this matter.  The initial October 2007 complaint specifically alleges that when Cooper arrived in South Carolina, "a worker with a forklift began to unload Cooper's trailer and pipe materials.  As the pipes were being unloaded the pipes shifted and fell off the trailer and struck Mr. Cooper."  (Doc. 137, Ex. 1 at 4)  The complaint further alleges, "Defendants, named and Fictitious, negligently, wantonly and or recklessly failed to properly load, secure and/or chock the pipe in such a manner so that the load would remain secure on the truck during the unloading process."  *Id.* at 6.  The amended complaint, filed in May 2008, is even more clear, stating that the underlying defendants negligently "failed to otherwise maintain the safety of workers such as the

plaintiff during the unloading process so that the load would remain secure on the truck and such that workers such as [Cooper] were not at risk of injury during the unloading process." (Doc. 137, Ex. 2 at 6) From these statements, QBE was on notice that the incident in question occurred during the loading and unloading of Cooper's truck. The Complaint also further states that a forklift was in use at the time of the accident. QBE clearly should have known that the mechanical device exception to the loading and unloading clause was in play, at least for the purposes of determining its duty to defend.

QBE argues that it conducted an investigation and determined that no coverage was applicable. It is true that, if after investigation it is conclusively shown that no coverage is available, an insurance company may refuse to defend its insured. The Eleventh Circuit has stated, "In order to invoke an exclusion in denying a defense, the insurer bears the burden of pointing to allegations of the complaint or other available evidence by which the claim was clearly excludable. If the insurer fails to establish such evidence, the insurer bears a duty to defend even if subsequent developments indicate circumstances that would render the claim

excludable." *Universal Underwriters Ins. Co. v. Stokes Chevrolet*, Inc., 990 F.2d 598, 605 (11th Cir. 1993) (citing *United States Fidelity & Guaranty Co. v. Armstrong*, 479 So. 2d 1164, 1168-69 (Ala. 1985)).  In other words, if the insurer can point to evidence showing that it is clear no coverage is available, only then can it legitimately deny a defense.

That is certainly not the case in the present matter.  QBE always intended to deny coverage on the basis that the injury could be tied to the chocking process during the loading of the truck at ACIPCO's yard.  In a claims summary from 2008, QBE's adjustor stated that the loading and unloading exclusion applied, noting, "While I do not think that the unloading process being used in this incident meets the definition in the exclusion, the allegation is injury at the result of improper loading."  (Doc. 148, Ex. 33 at 2)  There are a number of problems with this conclusion.  First, the statement itself indicates doubt, as QBE admitted that, as to the unloading process at least, there was at minimum a possibility that the use of a mechanical device during unloading kept the incident from "meet[ing] the definition in the exclusion."  In a letter dated February 6, 2008, from Howard, one of QBE's attorneys, to Barrett, a claims representative in this

matter, Howard stated,  "[t]he auto exclusion clearly applies, but a question exists regarding the [mechanical device clause], which is underlined.  Since the accident occurred while the pipe was being unloaded with a forklift, a question exists regarding the application of this provision."  (Doc. 134, Ex. I at 2).   The letter goes on to state, "To the extent it would ever be determined by a court that the auto exclusion did not apply, then QBE would likely have coverage for the claim for idemnification."  *Id.* at 4.  QBE was clearly aware that, depending on how the evidence developed, it might owe coverage under its policy to ACIPCO.

Furthermore, while the wording of the loading and unloading exclusion might eventually have precluded coverage, QBE is not permitted to use such ambiguity to avoid providing a defense, and the subjective belief of the insurer alone is not sufficient to avoid a claim.  *See Blackburn v. Fidelity & Deposit Co.*, 667 So. 2d 661, 669 (Ala. 1995) ("If the insurer's interpretation of its own contract as excluding coverage could render an insured's claim 'fairly debatable,' then insurers would be encouraged to write ambiguous insurance contracts, secure in the knowledge that an obscure portion of the policy would provide an absolute defense to a claim of bad faith.") (citations

omitted).  But QBE has nevertheless explicitly relied on an interpretation of its exclusion — that "the forklift must be owned, operated by, or rented to, or loaned to a QBE insured for the mechanical device exception to apply" (Doc. 131 at 33) — about which its own coverage counsel stated, "We cannot locate any cases which confirm this interpretation and I candidly admit that the court could find that this interpretation could be ambiguous." (Doc. 148, Ex. 39 at 3)

QBE cannot support its contention that no defense was owed to Cooper. The Court has laid out above how and why QBE owes coverage to Southeast and ACIPCO, but the argument for providing a defense is even stronger. While this Court did not consider Cooper's disputed testimony regarding the use of the forklift at the time of unloading in determining that QBE owed coverage for his accident, QBE certainly should have examined that testimony in determining whether it owed a defense to Southeast and ACIPCO.  In Cooper's deposition, he stated, consistent with his complaint, "I am looking at [Perez].  He looks at me, and then all of a sudden he goes under a layer of pipes with the forklift, bumps the trailer.  And by then, I have nowhere to go.  And the pipes fell off the truck and come down on top

of me." (Doc. 137, Ex. 5, Cooper Depo. at 166:21-167:3)  While Cooper's

deposition was given after QBE had finally agreed to extend a defense in

September of 2008, his deposition is consistent with his answers to

interrogatories given in the underlying case. In those answers — given on

June 18, 2008, a month to the day before QBE denied for a third time a

defense to ACIPCO — Cooper stated, "Without notice to me, and without any

comment or conversation with me, [Perez] made contact with the pipes on

the rear of the truck.  The pipes on the front of the trucks rolled off the

truck and onto me." (Doc. 63, Ex. B at ¶30)  QBE was well aware of Cooper's

answers to these interrogatories, as they were included in a demand letter

sent to QBE by ACIPCO's attorneys on July 7, 2008. (Doc. 137, Ex. 21)  QBE's

July 18, 2008 refusal to provide a defense makes QBE's claim in its summary

judgment motion that "[o]nly when the Complaint was amended in May of

2008 to include allegations as to all Defendants' responsibilities for

unloading, did a duty of defense ever possibly exist, which QBE properly

undertook" all the more astonishing.[11]  (Doc. 131 at 2)     Even if QBE chose

---

[11] While QBE's eventual defense of ACIPCO was proper, it certainly was not prompt as QBE did not  undertake ACIPCO's defense for another four months after Cooper's complaint was amended.

to believe Perez's testimony claiming that the forklift was 15 feet from the trailer at the time of the accident, it could not willfully disregard the allegations in Cooper's complaint and interrogatory answers that invoked coverage under the CGL.  Therefore, it is evident to this Court that each of QBE's refusals to provide a defense to ACIPCO — December 18, 2007, February 6, 2008, and July 18, 2008 — constituted a breach of contract to undertake ACIPCO's defense.[12]

V.     Conclusion.

For the reasons set forth above, the Court finds that the use of a mechanical device not attached to the vehicle in the movement of property invoked the exception to QBE's Auto Exclusion in the CGL.  This same fact invoked the movement of property with a mechanical device exclusion under Great West's auto policy. To the extent Great West's motion for summary judgment seeks a declaration that it owes no coverage over Cooper's claim, it is GRANTED.  Furthermore, Southeast and ACIPCO's motion for summary judgment seeking a declaration that QBE breached its contractual duty to

---

[12] Given these conclusions, it is certain that the fact finder may determine that QBE's actions were in bad faith as well.  Therefore, QBE's motion for summary judgment as to Southeast and ACIPCO's bad faith claims is DENIED.

provide a defense to ACIPCO against the claims made by Cooper is GRANTED.

To the extent Great West, Southeast, and ACIPCO seek a declaration that

coverage for Cooper is not barred by the Auto Exclusion in QBE's CGL policy,

the motions for summary judgment are GRANTED.  However, the motions by

Great West, ACIPCO, and Southeast seeking a declaration that QBE is liable

for Cooper's injuries are DENIED.  QBE's motion for summary judgment is

DENIED.  ACIPCO and Southeast's bad faith claims along with whether QBE

has liability for Cooper's injury are issues for trial.  QBE owes ACIPCO and

Southeast all appropriately recoverable expenses incurred by ACIPCO and

Southeast as a result of QBE's breach of contract.

Done this <u>9th</u> day of <u>March 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**